STACY, ET UX. *v.* MONTGOMERY COUNTY,
MARYLAND, ET AL.

[No. 332, September Term, 1964.]

*Decided June 3, 1965.*

*Motion for rehearing filed July 2, 1965, denied August 2, 1965.*

The cause was argued before HORNEY, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*George L. Quinn, Jr.,* with whom was *Esther Cady Quinn* on the brief, for appellants.

*John C. Tracey* for Ernest L. Kendall, part of appellees; *Richard J. Sincoff, Assistant County Attorney,* with whom was *Robert G. Tobin, Jr., County Attorney,* on the brief, for Montgomery County, Maryland, other appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from an order dated August 11, 1964, of the Circuit Court for Montgomery County affirming the action of the County Board of Appeals for Montgomery County (the Board) dated January 10, 1964, granting a variance of four feet from the restrictions imposed by Section 104-29 (i) (1) d[1] of the Montgomery County Zoning Ordinance[2] to Ernest L. Kendall, the applicant before the Board.

Applicant, Kendall, contracted to purchase the property and improvements thereon at 2101 Seminary Road in Silver Spring, in July 1963, and became the owner thereof in August. The property is in a R-60 zone which permits single family residential homes, and has in the past been used for this purpose. He purchased the property with the intention of conducting a child care home; which is permitted in a R-60 zone classification if granted a special exception by the Board. Shortly after he contracted to purchase the property, he applied to the Board for this special exception. It was granted, and appellants, adjacent property owners, appealed the ruling to the Circuit Court. While this appeal was pending Kendall discovered that he needed a variance since his building was less than the required 25 feet from the Stacys' side yard property lines as required in the Zoning Code, Section 104-29 (i) (1) d. Accordingly, he filed another application with the Board requesting a variance from the 25 foot setback restriction. In the meantime, the Circuit Court reversed the action of the Board in granting the special exception since the building failed to meet the requirements of the zoning ordinance as to distance. Then, Kendall's application for a variance was granted after a hearing by the Board, which found that by reason of the extraordinary shape of the specific parcel of land on

---

1. This section provides: d Child care homes providing child care to more than twenty but not more than forty children at any one time:

    Total Area—20,000 square feet

    Frontage—150 feet

    Setback—25 feet from all property lines

2. Montgomery County Code, 1960, Chapter 104.

which the building to be used as a child care home was located, the strict application of the zoning regulations would result in exceptional hardship to the owner of the property. Evidence at the hearing indicated that the distance from the corner of the fifty year old residence to the appellants' property line was 24.42 feet. A porch, which Kendall offered to remove if required by the Board, was 21 feet from the Stacys' side lot line. On March 12, 1964, the Circuit Court passed an order permitting Montgomery County, one of the appellees here, to intervene as a defendant. The Board's ruling granting the variance was also appealed by the Stacys to the Circuit Court, which affirmed the Board's action by its order of August 11. They then appealed to this Court.

The appellants first argue that where one purchases realty with the intention to apply for a variance from restrictions imposed by a zoning ordinance, he may not contend that such restrictions caused him peculiar hardships that entitle him to the special privileges he seeks. From a careful examination of the record, we find that this is not the case here before us. Kendall purchased the property in question with the knowledge that a request for a special exception would be necessary for the operation of a child care home, a use which is permitted for this R-60 zoned property by the zoning laws of Montgomery County. The testimony shows that the need for a variance to accompany the original request was not determined until after the special exception had been granted. A re-survey was made of the property at the request of the applicant when there seemed to be some doubt as to the exact footage as shown on the plat previously submitted to the Board, which indicated the distance as 25 feet. The Board in its opinion found that the re-survey plat of the applicant's property showed "a surveyor's nightmare." It went on to say:

"The front lot line runs three different courses for a total distance of 159.19 feet. The rear line is 112.96 feet. While the east side line is straight, the west line runs four different courses and cuts into the property a distance of 25.88 feet at one point. This unusual situation places the corner of the appellant's [applicant's]

house 24.42 feet from the side lot line and brings an overhanging porch 21 feet from the line. The result is a technical violation of the 25-foot setback requirements for Child Care Homes in residential zones, * * *."

There is a marked distinction between "variance" and "special exception" in Montgomery County. A special exception within the meaning of the zoning ordinance is one which is controlled and which is expressly permissible in a given zone. It is granted by the Board, after a public hearing, upon a finding that conditions of the zoning ordinance are satisfied. A variance is authorized under the terms of the zoning ordinance where the literal enforcement of its terms would result in unnecessary hardships. By Section 104-22(a)(1) of the Montgomery County Code, the County Board of Appeals is authorized to "[g]rant variances from the strict application of this chapter when by reason of exceptional narrowness, shallowness, or shape of specific parcels of property * * * or by reason of exceptional topographical conditions or other extraordinary situations or conditions of specific parcels of property, the strict application of these regulations or amendments thereto would result in peculiar and unusual practical difficulties to, or exceptional or undue hardship upon, the owner of said property; provided that such relief or variances can be granted without substantial impairment of the intent, purpose, and integrity of the general plan * * *." It is further provided that this provision shall not be construed to permit the Board "under the guise of a variance, to change the use of land." See *Montgomery Co. v. Merlands Club,* 202 Md. 279, 96 A. 2d 261.

The Board heard the testimony of Clinton Frey, Jr., a surveyor, who, after having been qualified as an expert, testified as to the unusual shape of the property. The Board exercising its discretion in accordance with its expertise in zoning matters, determined from all of the evidence that all criteria had been met by the applicant to sustain the granting of the variance. We find that the court below was not in error in affirming the decision of the Board in granting the variance as provided in Section 104-22 of the Montgomery County ordinance under the circumstances presented in this case.

Appellant relying on *Marino v. City of Baltimore,* 215 Md. 206, 137 A. 2d 198, contends that Kendall did not meet all the tests as set out in that case. There, we said that one seeking a variance under the provisions of Section 36(c) of the Baltimore City Zoning Ordinance due to a hardship must show: (i) that if he complied with the ordinance he would not be able to secure a reasonable return from or to make any reasonable use of, his property; (ii) that the difficulties or hardships were peculiar to the property in question in contrast with those of other property owners in the same district; and (iii) that the hardship was not the result of the applicant's own actions. However, Section 104-22(a)(1) of the Montgomery County ordinance is quite different in language from that discussed by this Court in the *Marino* case. The language of the Montgomery County ordinance, above quoted, in regard to a variance in our opinion distinguishes this case from *Marino,* and our review of the testimony before the Board leads us to the conclusion that the strict application of that portion of the statement in (i) set forth in *Marino* as applied to Section 36(c) of the Baltimore City zoning ordinance can not be invoked to deny the granting of the variance under the facts and circumstances of this case. As to the second and third points, there is no doubt that the shape of the subject property presented the hardship which the record indicates was not known to Kendall before he purchased the land, and the need for a variance was neither planned by him nor was it the result of his own action. The "surveyor's nightmare" referred to by the Board was created by prior owners (Stacy's family) before Kendall bought the property and without his awareness that he would need a variance before he could operate a child care home.

We have held many times that a court may not substitute its judgment as to the wisdom or soundness of the action taken by an administrative body unless it is clear that such action was illegal, arbitrary or discriminatory. *Baltimore v. Sapero,* 230 Md. 291, 186 A. 2d 884; *Marino v. City of Baltimore, supra; Serio v. City of Baltimore,* 208 Md. 545, 119 A. 2d 387. The lower court rightly affirmed the decision of the Board.

*Order affirmed, with costs.*